1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,          )  Criminal
                                   )  No. 11-557 (KAM)
            Government,            )
                                   )  PLEA HEARING
   vs.                             )
                                   )  Brooklyn, New York
   RAUL GRANADOS-RENDON,            )  Date:  December 8, 2017
                                   )  Time:  2:00 p.m.
            Defendant.            )
_____

TRANSCRIPT OF PLEA HEARING
HELD BEFORE
THE HONORABLE JUDGE KIYO A. MATSUMOTO
UNITED STATES DISTRICT JUDGE
_____

A P P E A R A N C E S

For the Government:          Jennifer Sasso, AUSA
                             United States Attorney's Office
                             Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, New York  11201
                             718-254-7000

For the Defendant:           Joseph A. Gentile, Esq.
                             Frankie & Gentile, P.C.
                             1527 Franklin Avenue, Suite 104
                             Mineola, New York  11501
                             516-742-6590

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
_____

Court Reporter:              Annette M. Montalvo, CSR, RDR, CRR
                             Official Court Reporter
                             United States Courthouse, Room N375
                             225 Cadman Plaza East
                             Brooklyn, New York  11201
                             718-804-2711

2

1          (WHEREUPON, commencing at 2:19 p.m., the following

2     proceedings were had in open court, to wit:)

3          THE COURTROOM DEPUTY:  This is criminal cause for

4     pleading, 11-CR-557, *USA vs. Raul Granados-Rendon*.

5          Will the government's attorney state your

6     appearance, please.

7          MS. SASSO:  Good afternoon, Your Honor.  Jennifer

8     Sasso for the United States.

9          THE COURT:  Afternoon.

10          THE COURTROOM DEPUTY:  And on behalf of

11     Mr. Granados-Rendon.

12          MR. GENTILE:  Joseph Gentile.  Good afternoon,

13     Judge.

14          THE COURT:  Good afternoon.

15          And we have present a Spanish interpreter.  For the

16     record, your name, ma'am.

17          THE INTERPRETER:  Maristela Verastegui, previously

18     sworn.

19          THE COURT:  Thank you, ma'am.

20          Mr. Granados-Rendon, will you please raise your

21     right hand and take an oath to tell the truth.

22          (WHEREUPON, the defendant was duly sworn.)

23          THE COURT:  All right.  So, Mr. Granados-Rendon,

24     before I decide whether to accept your guilty plea, there are

25     some questions that I must ask you in order to assure myself

3

1  that your plea is valid.  If you do not understand my question

2  or wish me to clarify my question, or consult with your

3  attorney, please let me know.  All right, sir?

4          THE DEFENDANT:  Okay.

5          THE COURT:  Do you understand, sir, that having been

6  sworn to tell the truth, your answers to my questions will be

7  subject to penalties of perjury or making false statements if

8  you do not answer truthfully?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Would you state your full legal name,

11  please.

12          THE DEFENDANT:  Raul Granados-Rendon.

13          THE COURT:  And how old are you, sir?

14          THE DEFENDANT:  30.

15          THE COURT:  Would you tell me what schooling or

16  education you have had?

17          THE DEFENDANT:  First grade.

18          THE COURT:  All right, sir.  And have you had any

19  difficulty communicating with your attorney Mr. Gentile with

20  the assistance of a Spanish interpreter?

21          THE DEFENDANT:  No.

22          THE COURT:  Are you able to read or write any

23  language, sir?

24          THE DEFENDANT:  No.

25          THE COURT:  Mr. Gentile, are you satisfied that your

4

1   client does have the ability to communicate effectively with

2   you about the charges, his rights, and this proceeding?

3           MR. GENTILE: The answer to the question is yes,

4   Judge. I will say, though, that it takes more effort than the

5   standard situation because of the educational circumstance

6   that he just indicated. Simply stating, legal concepts, in

7   particular, have to be explained sometimes more than once with

8   different examples so that he understands. But I believe

9   after quite a number of visits and quite a number of going

10   through it, he does understand it.

11           THE COURT: Thank you.

12           Mr. Granados-Rendon, are you presently or have you

13   recently been under the care of any doctor or psychiatrist?

14           THE DEFENDANT: No.

15           THE COURT: In the past 24 hours, have you taken any

16   narcotic drugs, medicine or pills or had any alcoholic

17   beverages?

18           THE DEFENDANT: No.

19           THE COURT: Have you recently been hospitalized or

20   treated for any mental or emotional problems or addictions to

21   alcohol or narcotics?

22           THE DEFENDANT: No.

23           THE COURT: Do you feel that your mind is clear now?

24           THE DEFENDANT: Yes.

25           THE COURT: Do you understand what is going on here

5

1  today and why you are here?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Mr. Gentile, have you discussed the

4  matter of pleading guilty with your client?

5        MR. GENTILE:  Yes, Your Honor.

6        THE COURT:  Are you satisfied that he understands

7  his rights that he would be waiving if he were to plead

8  guilty?

9        MR. GENTILE:  Yes, he does, Judge.

10        THE COURT:  Is Mr. Granados-Rendon capable, in your

11  view, of understanding the nature of the proceedings we are

12  holding right now?

13        MR. GENTILE:  I believe so, Judge, yes.

14        THE COURT:  Do you have any doubt as to whether or

15  not he's competent to plead at this time?

16        MR. GENTILE:  No.  I believe he is competent.

17        THE COURT:  Have you advised your client of the

18  maximum and minimum sentencing fine that could be imposed as a

19  result of his guilty plea to Counts 1 and 2 of the indictment?

20        MR. GENTILE:  Yes, Your Honor.

21        THE COURT:  Have you also discussed with your client

22  the consideration -- my consideration of the sentencing

23  guidelines and the sentencing factors set forth in the

24  criminal code?

25        MR. GENTILE:  We have had those discussions, and in

6

1    this particular case as many issues that we have thoroughly

2    analyzed and discussed that will ultimately be raised at

3    sentencing, too.

4         THE COURT:  Thank you.

5         Mr. Granados-Rendon, as you know, you have the right

6    to an attorney throughout these proceedings.  We have

7    appointed Mr. Gentile to represent you.  Have you had an

8    opportunity to discuss your case with your attorney?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Are you satisfied to have Mr. Gentile

11   represent you?

12        THE DEFENDANT:  Yes.

13        THE COURT:  My understanding, sir, is that you

14   intend to plead guilty to Count 1 and Count 2 of the

15   indictment, which both counts charge you with sex trafficking

16   conspiracy; is that correct?

17        THE DEFENDANT:  Yes.

18        THE COURT:  And just for the record, Count 1 charges

19   a sex trafficking conspiracy between October 2000 and December

20   2008.  And Count 2 charges a sex trafficking conspiracy

21   between January 2009 and June 2011.  In particular, I have

22   been advised that Count 2 involves a victim known as

23   Christine.

24        MS. SASSO:  Your Honor, actually, to be clear, I

25   think that that was said in the reverse.  Count 1 involves

7

1   Jane Doe number 2.  Count 2 does not name a Jane Doe victim.

2            THE COURT:  All right.  Excuse me.

3            So, Mr. Gentile, Count 1 involves a woman named

4   Christine, and Count 2 does not name any person, is that

5   correct, Mr. Gentile, based on your conversations with your

6   client and your explanation of the indictment to him?

7            MR. GENTILE:  Yes, Judge.

8            THE COURT:  Mr. Granados-Rendon, have you discussed

9   the indictment with your attorney?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you wish to have any further

12  discussion with him about the indictment or the charges to

13  which you intend to plead guilty?

14           THE DEFENDANT:  Sorry, can you repeat that.

15           THE COURT:  Do you want to have any further

16  discussions with your attorney about the charges in the

17  indictment to which you intend to plead guilty?

18           THE DEFENDANT:  Yes.

19           THE COURT:  All right.  Why don't you have those

20  conversations.

21           MR. GENTILE:  Sure.

22           (Short pause.)

23           MR. GENTILE:  I think he was a little confused on

24  that.

25           THE COURT:  So did you have a chance to speak to

8

1  your attorney, sir?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  You do have a right to

4  maintain your earlier not guilty plea, if you wish to do so.

5  Do you understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If you do continue to plead not guilty,

8  under the United States Constitution and the laws, you would

9  be entitled to a speedy and public trial by a jury with the

10  assistance of your attorney Mr. Gentile on the charges set

11  forth in the indictment, 11-CR-557; do you understand?

12          THE DEFENDANT:  Yes.

13          THE COURT:  At the trial, you would be presumed to

14  be innocent, the government would have to overcome that

15  presumption and prove you guilty with competent evidence

16  beyond a reasonable doubt as to every element of the offenses

17  charged.  You would not have to prove that you were innocent.

18  If the government failed to prove you guilty beyond a

19  reasonable doubt, the jury would have the duty to find you not

20  guilty.  Do you understand?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Sometimes in a criminal case, jurors

23  will return a verdict of not guilty even if the jurors believe

24  that the defendant on trial probably committed the offense

25  charged.  When a jury returns a not guilty verdict, the jurors

9

1    are not necessarily saying that the defendant is innocent, but

2    instead the jurors may not have been convinced beyond a

3    reasonable doubt that the defendant is guilty.  Do you

4    understand?

5              THE DEFENDANT:  Yes.

6              THE COURT:  During the trial, the witnesses for the

7    government would have to come to court and testify in your

8    presence, and your attorney would have the right to

9    cross-examine those witnesses and to object to any of the

10   evidence offered against you by the government.  Do you

11   understand?

12             THE DEFENDANT:  Yes.

13             THE COURT:  You and your attorney would have the

14   right but no obligation to offer evidence and to require

15   witnesses to come to court and testify in your defense.  Do

16   you understand?

17             THE DEFENDANT:  Yes.

18             THE COURT:  At the trial, although you would have

19   the right to testify, if you chose to do so, you could not be

20   required to testify.  Under the United States Constitution,

21   you cannot be compelled to incriminate or to say things that

22   would be against your interests with respect to the criminal

23   charges.  Do you understand?

24             THE DEFENDANT:  Yes.

25             THE COURT:  If you decided not to testify at a

1  trial, I would instruct the jury that they could not hold that

2  against you, or even discuss it during their deliberations.

3  Do you understand?

4  THE DEFENDANT:  Yes.

5  THE COURT:  If you do plead guilty, and I accept

6  your guilty plea, you will be giving up your constitutional

7  right to a jury trial and all the other rights I've just

8  discussed.

9  There will be no further trial of any kind, and no

10  right to appeal from the judgment of guilty entered against

11  you.  Do you understand?

12  THE DEFENDANT:  Yes.

13  THE COURT:  You will then be convicted based upon

14  your plea of guilty during the proceeding we are holding right

15  now, and the government will be free of any obligation to

16  prove anything about what you did in connection with the

17  charged crimes.  Do you understand?

18  THE DEFENDANT:  Yes.

19  THE COURT:  If you did proceed to a trial and were

20  convicted by the jury's verdict, you would have -- you would

21  have the right to ask the Appellate Court or a higher court to

22  review the legality of all of the proceedings leading up to

23  your conviction.  But when you enter a guilty plea, you are

24  substituting your own words for the jury's verdict.  And when

25  you do that, you give up your right to bring an appeal or

11

1  other challenge to your conviction or the judgment of guilty

2  that will be entered against you.  Do you understand?

3         THE DEFENDANT:  Yes.

4         THE COURT:  If you do plead guilty, I will have to

5  ask you questions about what you did in order to satisfy

6  myself that you are, in fact, guilty of the charge to which

7  you seek to plead guilty.  You will have to answer my

8  questions truthfully and acknowledge your guilt.  Do you

9  understand?

10         THE DEFENDANT:  Yes.

11         THE COURT:  And in the process of answering my

12  questions truthfully and acknowledging your guilt, you will be

13  giving up your right not to incriminate yourself.  Do you

14  understand?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Are you willing to give up your right to

17  a trial and the other rights that I have just described?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Now, sir, I understand that you entered

20  into an agreement with the government.  I would like to ask

21  you whether your signature appears on the last page of this

22  document.

23         THE DEFENDANT:  Yes.

24         THE COURT:  Before you signed this agreement, did

25  somebody translate this agreement into Spanish?

12

1          THE DEFENDANT:  Yes.

2          THE COURT:  Did you also have the chance to speak

3   with your attorney about what this agreement provides?

4          THE DEFENDANT:  Yes.

5          THE COURT:  By signing -- do you understand what

6   this agreement provides, sir?

7          THE DEFENDANT:  Yes.

8          THE COURT:  For the record, I note that an

9   individual identified as C. Vinon translated this agreement on

10  December 7, 2017.  Is that correct, Mr. Gentile?

11         MR. GENTILE:  Not only on that date, which was

12  yesterday, Judge, did I go with Mr. Vinon, but Mr. Vinon and I

13  have been probably at least a half a dozen times, and on two

14  separate occasions he translated the entire document, with the

15  only notable exception, which the assistant was kind enough to

16  change the date for the acceptance of the plea because we

17  adjourned the date.  Other than that, the entire terms have

18  been read through him in Spanish and the translation.

19         THE COURT:  Thank you.

20         By signing this agreement, sir, do you intend to

21  indicate that you understand the agreement and that you agree

22  to those terms?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  Do you have any questions so

25  far about the charges in the indictment that you intend to

1  plead guilty to?

2          THE DEFENDANT:  No.

3          THE COURT:  Would you like me to read those charges,

4  or do you waive reading?

5          THE DEFENDANT:  No.

6          THE COURT:  Sir, I am going to go over the penalties

7  that you may face if you plead guilty to Count 1 and Count 2.

8  Those are found in paragraph 1 of your agreement.

9          First, with regard to Count 1, you face a maximum

10  term in prison of five years.  There is no minimum term of

11  imprisonment.  You face a maximum supervised release term of

12  three years, which follows any term that you may spend in

13  jail.

14          If you violate the terms of your supervised release,

15  you could be sentenced to jail for up to two years additional

16  years, without any credit for time that you may have already

17  spent in jail as a result of your conviction and without any

18  credit for time that you have already spent on supervised

19  release.  Do you understand?

20          THE DEFENDANT:  Yes.

21          THE COURT:  You also face a maximum monetary fine of

22  $250,000.  Do you understand?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Now, I am just wondering -- okay.  You

25  must also pay a $100 special assessment, which is payable to

14

1    the clerk of the court for Count 1.  And, in addition, you

2    will be removed from United States, as set forth in your

3    agreement at paragraph 6.

4              Do you understand that you will not be permitted to

5    stay in the United States because of your conviction if you

6    plead guilty to Count 1?

7              THE DEFENDANT:  Yes.

8              THE COURT:  With regard to Count 2, you face a

9    maximum prison term of life in prison, and a minimum term of

10   zero years.  Do you understand?

11             THE DEFENDANT:  Yes.

12             THE COURT:  You also face a supervised release term,

13   which would be a minimum of five years on Count 2.  Do you

14   understand?

15             THE DEFENDANT:  Yes.

16             THE COURT:  During supervised release, a probation

17   officer would supervise your activities, and you would have to

18   report to your probation officer about your activities.  If

19   you violate your supervised release, you may be sentenced to

20   prison for up to a life term without any credit for time that

21   you have already spent on supervised release and without any

22   credit for time that you have already spent in prison.  Do you

23   understand?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Just one moment.

15

1           (Short pause.)

2           THE COURT:  In addition, sir, you also face a

3    $250,000 fine on Count 2, and you will have to make

4    restitution, which is a monetary payment to the victims of

5    your offense in Count 2.  Do you understand?

6           THE DEFENDANT:  Yes.

7           THE COURT:  The amount of money that you will have

8    to pay to any victims of your offense in Count 2 will be

9    determined at the time of your sentencing.  Do you understand?

10          THE DEFENDANT:  Yes.

11          THE COURT:  You also face a $100 mandatory special

12   assessment on Count 2 in addition to the $100 you will owe on

13   Count 1.  Do you understand?

14          THE DEFENDANT:  Yes.

15          THE COURT:  In addition, sir, you will have to be

16   removed from the United States, and you will also have to

17   register in the United States as a sex offender.  Do you

18   understand?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you have any questions so far?

21          THE DEFENDANT:  No.

22          THE COURT:  Sir, under the Sentencing Reform Act,

23   which is a federal law of 1984, the United States Sentencing

24   Commission has issued guidelines for judges to consult in

25   determining a sentence in a criminal case.  United States

16

1   Supreme Court has decided that those guidelines are not
2   mandatory, but, rather, advisory.  The guidelines provide a
3   range of sentence within the statutory minimum and statutory
4   maximum.  In addition to those guidelines, I will also
5   consider factors set forth in the United States criminal code
6   in determining your sentence.  Do you understand?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, at paragraph 2 of your agreement,
9   you were advised that the guidelines are advisory rather than
10  mandatory.  Paragraph 2 also sets forth the government's
11  estimated guideline offense level and range of sentence that
12  you would face if you plead guilty to Count 1 and Count 2.  So
13  in paragraph 2 of your agreement, the government estimates
14  that your guideline adjusted offense level -- and this is for
15  Count 1 and Count 2, Ms. Sasso?

16         MS. SASSO:  That's correct, Your Honor.  They
17  essentially compound together.

18         THE COURT:  All right.  So for Count 1 and Count 2
19  of the indictment, the government estimates that you would
20  have a guideline offense level of 36, which is calculated as
21  follows:  With regard to Jane Doe victim 2, also identified as
22  Christina, you have a base offense level under the guidelines
23  of 30.  Because the offense involved conduct involved or
24  described in Section 2241(a) or (b), four levels would be
25  added.

17

1        And would you specify, Ms. Sasso, what that conduct

2    is, please.

3        MS. SASSO:  Your Honor, that would involve under the

4    subsection of the overt acts in Count 1, the nature of the

5    interactions between the individual known as Jane Doe 2 and

6    the defendant that would have been either violent or

7    threatening to that individual in nature, some sort of

8    aggravating circumstances.

9        THE COURT:  Mr. Rendon, do you understand that the

10   government is estimating that you will receive an additional

11   four levels on your offense level because of either threats of

12   violence or violent acts in relation to Jane Doe Number 3,

13   also known as Christina?

14       THE DEFENDANT:  Yes.

15       THE COURT:  Do you also understand that the

16   government is adding two additional points to your guideline

17   estimated offense level because the government believes that

18   Christina was a vulnerable victim?  And if the government

19   could explain vulnerable victim to the defendant and make a

20   record, I'd appreciate it.

21       MS. SASSO:  Yes, Your Honor.

22       In light of the financial circumstances and the fact

23   that the victim was essentially manipulated into coming from

24   Mexico into the United States with false promises and sort of

25   a lack of an ability to understand that, in terms of

1  educational ability or comprehension, and otherwise being in a

2  position able to be manipulated because the victim was in need

3  of money or beholden to the threats of violence or violence

4  that were happening in the conspiracy, the government will

5  contend that the vulnerable victim enhancement is applicable

6  here.  That said, the defense has preserved their right to

7  contest that and has stipulated in the agreement to a 31 level

8  guidelines calculation, which does not include that vulnerable

9  victim enhancement.

10          MR. GENTILE:  If I may, Judge.

11          THE COURT:  Yes, Mr. Gentile.

12          MR. GENTILE:  Judge, Christina was not his

13  girlfriend or wife.  It was his brother's.  But he lived with

14  them.  So he was aware of how his brother was treating her,

15  and I think he might have also escorted her up.

16          Just so that you know, and I don't know how much you

17  read, he had a separate woman who was not part of the

18  extradition affidavit materials.  But we have had some

19  discussions about that.  There's a lot to digest here, which

20  is why when the time comes, we had a little disagreement on

21  what the guideline level is, but the general nature of the

22  circumstances, I just wanted you to be aware of that.

23          THE COURT:  I appreciate that.

24          And, Mr. Granados-Rendon, before you're sentenced,

25  you will have an opportunity with your lawyer to present your

1 arguments about what sentencing guidelines should be

2 considered, and how they should be calculated. But in any

3 event, your attorney has indicated that you agree to a

4 guideline calculation level of 31. Do you understand that and

5 agree to that?

6         THE DEFENDANT: Yes.

7         THE COURT: And did you discuss this with your

8 lawyer, sir?

9         THE DEFENDANT: Yes.

10         MS. SASSO: If I may, Your Honor.

11         THE COURT: Yes.

12         MS. SASSO: The government base offense level is

13 calculated at a 36. The parties are both in agreement that

14 the defendant is satisfying the acceptance of responsibility

15 deserving of the third point reduction, and so the

16 government's final calculation is an offense level of 33. So

17 there's really only a two point discrepancy in the

18 calculations by defense and government, which, of course, we

19 will address at the time of sentencing.

20         THE COURT: So, Mr. Granados-Rendon, based on the

21 government's calculation and their position, they believe that

22 if you are found to be at a level 33 under the advisory

23 guidelines, you will face a term in prison between 135 to 168

24 months. Do you understand?

25         THE DEFENDANT: Yes.

1          THE COURT:  And that's assuming that you are found

2     to be criminal history category I, which generally means that

3     you haven't had prior convictions.  Do you understand?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Mr. Gentile, have you reviewed these

6     provisions with your attorney?

7          MR. GENTILE:  Yes, with my client.

8          THE COURT:  I mean with your client.  I'm sorry.

9          MR. GENTILE:  No problem.  Yes, I have, several

10    times.

11         THE COURT:  Thank you.

12         Now, Mr. Granados-Rendon, I will not be able to make

13    my own independent advisory guideline calculation until after

14    the United States probation department prepares what is called

15    a pre-sentence report.  That's a report that will tell me

16    about you, your educational background, your family history,

17    your prior criminal history, if any, and your role in the

18    charges to which you are going to be pleading guilty.

19         I will then give both sides, your attorney and the

20    government, and you, an opportunity to object to any of the

21    facts reported by the probation department.  I will then make

22    my own independent advisory guidelines calculation, and once I

23    do that, sir, I have authority to impose a sentence that is

24    more severe or less severe than that recommended by the

25    advisory guidelines.  Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  In addition, sir, I'd like you to be

3     aware that in paragraph 4 of your agreement, you are agreeing

4     not to appeal your sentence or conviction if I impose a term

5     in prison of 188 months or below.

6          Do you understand that you are giving up your right

7     to bring an appeal if you receive a prison term of 188 months

8     or below?

9          THE DEFENDANT:  Yes.

10         THE COURT:  And have you discussed this provision

11    with your lawyer?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Mr. Gentile, are you satisfied that your

14    client understands his appellate waiver if he receives a

15    sentence of 188 months or less?

16         MR. GENTILE:  Yes, he does, Judge.

17         THE COURT:  Do you also understand, sir, that parole

18    in the federal system has been abolished, and if you are

19    sentenced to prison, you will not be released on parole?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And as we know, the -- your lawyer and

22    you are going to contest the government's estimates under the

23    advisory guidelines, but what's important is for you to

24    understand that if you receive a sentence that is more severe

25    than what you would expect or hope for, that that will not be

22

1    a basis for you to withdraw your guilty plea.  Do you

2    understand?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Let me also advise you that because of

5    your guilty plea in this case, you will be required to

6    register as a sex offender under the Sex Offender Registration

7    and Notification Act.  Do you understand?

8            THE DEFENDANT:  Yes.

9            THE COURT:  You may also, as a registered sex

10   offender and as result of your conviction in this case, you

11   may also face the possibility of a civil commitment under the

12   Adam Walsh Child Protection and Safety Act after you finish

13   serving your term in prison.  Do you understand?

14           THE DEFENDANT:  Yes.

15           THE COURT:  The Adam Walsh Child Protection Act

16   permits the United States Attorney General or the director of

17   the Bureau of Prisons to certify that a prisoner who is

18   nearing the end of his prison term is a sexually dangerous

19   person.  There would be a hearing before the court, and the

20   government may attempt to demonstrate by clear and convincing

21   evidence that an inmate is sexually dangerous, as that term is

22   defined under law.

23           If the Court finds that you are sexually dangerous,

24   you may be committed to further custody until a court

25   determines that you are no -- that you are no longer sexually

23

1    dangerous.  Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. Gentile, have you explained the

4    possibility of civil commitment to your client?

5              MR. GENTILE:  We have discussed it, yes, Judge.

6              THE COURT:  Are you convinced that he understands --

7              MR. GENTILE:  I believe he does.

8              THE COURT:  -- further civil commitment?

9              MR. GENTILE:  Yes, I believe he does.

10             THE COURT:  Mr. Granados-Rendon, do you have any

11   questions you would like to ask me before I hear your plea?

12             THE DEFENDANT:  No.

13             THE COURT:  Are you ready to plead?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Mr. Gentile, do you know of any reason

16   why your client should not plead guilty to Count 1 and Count 2

17   of the indictment?

18             MR. GENTILE:  No, Your Honor.

19             THE COURT:  Are you aware of any viable legal

20   defenses that are causing you to counsel Mr. Granados-Rendon

21   not to plead guilty to Count 1 and Count 2?

22             MR. GENTILE:  No, Judge.

23             THE COURT:  Mr. Granados-Rendon, what is your plea

24   to Count 1, guilty or not guilty?

25             THE DEFENDANT:  Yes.  Guilty.

24

1        THE COURT:  What about Count 2, do you wish to plead
2   guilty or not guilty to Count 2?
3        THE DEFENDANT:  Also guilty.  Yes.
4        THE COURT:  Are you making a plea of guilty to
5   Counts 1 and 2 voluntarily and of your own free will?
6        THE DEFENDANT:  Yes.
7        THE COURT:  Did anyone threaten you or force you to
8   plead guilty to Count 1 and Count 2?
9        THE DEFENDANT:  No.
10       THE COURT:  Other than the agreement that you made
11  with the government, did anyone make you any promise that
12  caused you to plead guilty to Count 1 or Count 2?
13       THE DEFENDANT:  No.
14       THE COURT:  Did anyone make any promise to you about
15  what your sentence will be in this case?
16       THE DEFENDANT:  No.
17       THE COURT:  Sir, why don't you first start by
18  telling me what you did in connection with the charge of sex
19  trafficking set forth in Count 1.
20       THE DEFENDANT:  My brother and my cousin, I agreed
21  with them to bring from Mexico, women, here to the United
22  States to work in prostitution.
23       THE COURT:  And -- I'm sorry?
24       MR. GENTILE:  The prosecutor just asked about the
25  time frame.  We'll acknowledge the time frame.

25

1      THE COURT:  Sir, did you make this agreement to

2  bring these women from Mexico to the United States to work in

3  prostitution between October 2000 and December 2008?

4      THE DEFENDANT:  Yes.

5      THE COURT:  And when the women worked in

6  prostitution, did you, your brother, and cousin, or other

7  people benefit financially from the prostitution acts of these

8  women?

9      THE DEFENDANT:  Yes.

10      THE COURT:  And did the bringing of these women from

11  Mexico to the United States for the purpose of engaging in

12  prostitution involve the use of violence or force or threats

13  of violence or force or telling women that they are being

14  brought here for some other purpose that was not prostitution?

15      THE DEFENDANT:  Yes.

16      THE COURT:  And where did these women engage in

17  prostitution once they arrived here in the United States?

18      THE DEFENDANT:  New York.

19      THE COURT:  Do you know where in New York?

20      THE DEFENDANT:  In Queens.

21      THE COURT:  Queens, New York?

22      THE DEFENDANT:  And the Bronx.

23      THE COURT:  All right.  Now, Ms. Sasso, was there

24  anything else with regard to Count 1 that you wish to hear

25  from this defendant?

26

1          MS. SASSO:  Your Honor, only that we could prove,

2    based on travel and transportation and financial benefit, that

3    there was an impact on interstate commerce.

4          THE COURT:  And, Mr. Gentile, do you dispute the

5    government's proffer that they could prove the impact on

6    interstate commerce?

7          MR. GENTILE:  No objection.

8          THE COURT:  All right.  With regard to Count 2,

9    which is the sex trafficking conspiracy between January 2009

10   and June 2011, would you please tell me what you did with

11   regard to that count?

12         MR. GENTILE:  One moment, Judge.

13         THE COURT:  Yes.

14         (Short pause.)

15         THE DEFENDANT:  I brought Christina, me and my

16   brother brought her, here to the US, to work as a prostitute.

17         THE COURT:  And did you or your brother agree that

18   either force, violence, threats of force or violence, or

19   telling Christina things that weren't true about her reasons

20   for coming to the United States, did you agree with your

21   brother that those methods of bringing Christina would be

22   used?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And did you and your brother obtain

25   money because Christina had engaged in prostitution as a

1    result of your bringing her here?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And was Christina one of the women that

4    you brought to work in prostitution either in Queens or the

5    Bronx or both?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And did this occur between January 2009

8    and 2011?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Ms. Sasso, is there anything else you'd

11   like to add?

12             MS. SASSO:  Similarly to Count 1, we could prove the

13   impact on interstate commerce based on the defendant's

14   proffer.

15             THE COURT:  Mr. Gentile, similarly, with regard to

16   Count 2, do you agree that the government would proffer and

17   prove that there was an impact on interstate commerce?

18             MR. GENTILE:  I would certainly concur on that.

19   Judge, I also would note, which you duly noted in one of the

20   status conferences, with regard to that first count, he was a

21   juvenile during a period of that time.  I will raise that as a

22   sentencing issue also before Your Honor.  Just so that you are

23   aware of it.  He was born in December of 1986.  So for a

24   portion of that period of time he was during his 15 year

25   umbrella that we are talking about.  About five years of it,

1  he was a juvenile, technically.  But I will leave that for

2  another day.  But I am just bringing it to your attention.

3          THE COURT:  All right.  Thank you.

4          And has the government verified his age at the time

5  of the offense conduct?

6          MS. SASSO:  Your Honor, there is some ambiguity as

7  to the defendant's date of birth.  There's inconsistent

8  records that the government has, and we certainly have records

9  that corroborate the idea that he was born in December of

10  1986.  In any event, Count 1 does span time in which the

11  defendant was a legal adult over the age of 18.

12          THE COURT:  All right.  Thank you.

13          Is there anything else either party wishes to bring

14  to my attention before we move forward?

15          MS. SASSO:  Not from the government, Your Honor.

16          MR. GENTILE:  No, Your Honor.  There will be a time

17  and place in the future.

18          THE COURT:  All right.  Mr. Granados-Rendon, based

19  upon your statements to me under oath at this proceeding, I

20  find that you are acting voluntarily, that you fully

21  understand your rights and the consequences of your guilty

22  plea, and that there is a factual basis for me to accept your

23  plea of guilty to Counts 1 and 2 of the indictment.  I,

24  therefore, do accept your plea of guilty to Counts 1 and 2.

25          We have scheduled your sentencing date for April 23,

1   2018, at 11:00 a.m.

2          MR. GENTILE:  May I just say something on that,

3   Judge?

4          THE COURT:  Yes, of course.

5          MR. GENTILE:  And if it affects you, it does, and if

6   it doesn't, it doesn't.

7          As you probably are aware, probation is very

8   diligent in getting right to a defense attorney and saying,

9   let's schedule the interview.  I am going for surgery on

10  Monday.  I estimate it is going to be about a two-month rehab.

11  It is a rotator cuff tear.  I am going to ask with Your

12  Honor's permission that if the probation office does call,

13  could I ask them to -- that I can do this interview after

14  February 1.  And if you want to keep that date, that's fine, I

15  just wanted to let you know that, if you don't mind.

16         THE COURT:  That would be fine with me.  If you need

17  to adjourn the April 23 date, you will let us know.

18         MR. GENTILE:  Okay.

19         THE COURT:  Right now, it is 11:00 on that date.

20  And if the parties would kindly follow Rule 32 regarding any

21  objections, or comments to the pre-sentence report, which

22  should be served on your adversary, and the probation

23  department, with two courtesy copies to the Court.  You need

24  not file those via ECF, but we would like hard copies.  And

25  then with regard to any sentencing submissions or motions or

30

1    letters of support, those should be filed via ECF, with names

2    of victims redacted, of course.

3            They would be due from the defense by April 2, 2018,

4    the government would respond by April 9, 2018, and any reply

5    would be due April 16, 2018.  As I said, those should be filed

6    via ECF with courtesy copies to probation and my chambers.

7            Is there anything else I should address?

8            MS. SASSO:  No, Your Honor.  Thank you.

9            MR. GENTILE:  No, Your Honor.  Thank you very much.

10           THE COURT:  Thank you.  Good luck with your surgery,

11   sir.

12           MR. GENTILE:  Thank you, Judge.  I appreciate it.

13           THE COURT:  Thank you, Marshals.

14           (WHEREUPON, at 3:01 p.m., the proceedings were

15   completed.)

16

17

18                         *  *  *  *  *

19                  **REPORTER'S CERTIFICATE**

20
         I, ANNETTE M. MONTALVO, do hereby certify that the
21   above and foregoing constitutes a true and accurate transcript
     of my stenographic notes and is a full, true and complete
22   transcript of the proceedings to the best of my ability.

23           Dated this 1st day of August, 2018.

24   /s/Annette M. Montalvo
     _____
     Annette M. Montalvo, CSR, RDR, CRR
25   Official Court Reporter